IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GARY MCKENNIE,

    Petitioner,

v.                                                                                               No. 1:17-cv-01061-JDB-jay

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING 28 U.S.C. § 2255 AMENDED PETITION,
DENYING MOTION TO EXPEDITE AS MOOT,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Gary McKennie,[1] has filed an amended motion to vacate, set aside, or correct his sentence, (Docket Entry ("D.E.") 12), pursuant to 28 U.S.C. § 2255, as well as a supplemental claim, (D.E. 23-1 at PageID 365), (collectively, "Amended Petition").[2] The inmate has also submitted a motion for an expedited ruling. (D.E. 27.) For the following reasons, the Amended Petition is DENIED and the motion to expedite is DENIED as moot.[3]

---

[1] The Court will refer to Petitioner as "Defendant" in its discussion of the underlying criminal case.

[2] The Amended Petition is comprised of the claims asserted *pro se* in the pleading docketed at D.E. 12, and the arguments and additional claim advanced by McKennie's later-retained counsel in D.E. 23-1. Although, by order dated December 11, 2017, the Court construed the document at D.E. 23-1 as superseding the earlier *pro se* pleading, (*see* D.E. 25), the parties have briefed all issues presented in both documents. Accordingly, the Court will address the four claims asserted in the *pro se* pleading and the fifth claim presented by retained counsel.

[3] Record citations are to documents filed in the instant case, unless otherwise noted.

## BACKGROUND

In December 2014, the federal grand jury for the Western District of Tennessee returned an indictment charging McKennie with twenty-one counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (*United States v. McKennie*, No. 1:14-cr-10103-JDB-1, D.E. 2 (W.D. Tenn.) ("No. 1:14-cr-10103-JDB-1").)  Defendant subsequently entered a plea of guilty to all counts pursuant to a written plea agreement with the Government.  (*Id.*, D.E. 19, 20, 21.)  The agreement required the Government to recommend the low end of the advisory incarceration range under the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.").  (*Id.*, D.E. 20 at PageID 30.)

At the change of plea hearing, the Government recited the evidence that would have been presented at trial, including proof of Defendant's status as a convicted felon.  Specifically, the prosecutor stated that, "in February of 2010, [Defendant] was convicted of felony theft of property and false reporting[.]"  (*Id.*, D.E. 50 at PageID 187.)  McKennie answered "Yes, sir," when asked by the Court, "[I]s the information referencing your possession of these firearms, the fact that you have been, previously been convicted of a felony, and that these firearms were all manufactured outside the state of Tennessee, it that basically correct, sir?"  (*Id.* at PageID 189.)

In November 2015, the federal grand jury returned a one-count indictment charging McKennie with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  (*United States v. McKennie*, No. 1:15-cr-10098-JDB-1, D.E. 2 (W.D. Tenn.) ("No. 1:15-cr-10098-JDB-1").)  Pursuant to a written agreement with the Government, Defendant pleaded guilty to the sole count of the indictment on January 27, 2016.  (*Id.*, D.E. 16, 17, 18.)  Like the plea agreement in the 2014 case, the agreement in the subsequent case called for the Government to recommend the low end of the advisory incarceration range.  (*Id.*, D.E. 17 at PageID 26.)  At the change of

plea hearing, the Government recited the evidence that would have been presented at trial and again referenced Defendant's status as a felon resulting from his February 6, 2010 conviction for theft of property. (*Id.*, D.E. 31 at PageID 106.) Upon questioning by the Court, Defendant affirmed that the prosecutor's recitation was "basically correct." (*Id.* at PageID 108.)

The two indictments were combined for sentencing purposes. (Presentence Report ("PSR") at 1.) The United States probation officer assigned to Defendant a base offense level of 14 under U.S.S.G. § 2K2.1. (*Id.* at ¶ 23.) The offense level was increased by four under U.S.S.G. § 2K2.1(b)(1)(B) because "the offense involved between eight and twenty-four firearms." (*Id.* at ¶ 24.)

Two points were added for obstruction of justice under U.S.S.G. § 3C1.1 as a result of Defendant's conduct in "attempt[ing] to hide or get rid of a rifle that was in his residence before meeting with ATF investigators."[4] (*Id.* at ¶ 27.) More specifically,

> [t]he defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice when [he] contacted another individual and asked him to take a rifle out of his residence before investigators arrived in case #1:14CR10103. The communication took place subsequent to the defendant receiving a call from ATF investigators requesting to meet him about the twenty firearms that were confiscated two to three days prior. At that point, the defendant knew or should have known that the rifle was part, or would immediately be part, of the investigation.

(PSR at ¶ 19.)

---

[4] Section 3C1.1 provides for a two-level increase in the offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct[,] or . . . a closely related offense[.]" U.S.S.G. § 3C1.1.

The offense level was increased another three points for obstruction of justice under § 3C1.3.[5] (*Id.* at ¶ 28.) The enhancement was recommended because, "[w]hile on bond in case 1:14CR10103, the defendant possessed ammunition that led to the indictment and conviction in case 1:15CR10098." (*Id.*)

The probation officer declined to recommend a reduction for acceptance of responsibility. (*Id.* at ¶¶ 20, 31.) "Based upon a total offense level of 23 and a criminal history category of II, the guideline imprisonment range [was determined to be] 51 months to 63 months." (*Id.* at ¶ 60 (bolding omitted).) The probation officer also calculated that the sentencing range would be "37 to 46 months" if the Court were to "grant[] [a 3-point] reduction for acceptance of responsibility[.]" (*Id.* at ¶ 61.)

Defense counsel, Steven West, filed a position paper objecting to the 2 level increase for obstruction of justice and the probation officer's decision not to recommend a reduction for acceptance of responsibility. (No. 1:15-cr-10098-JDB-1, D.E. 19 at PageID 33–34.) Regarding obstruction, counsel argued that the two points should not be applied because "the McKenzie Police did not remove the gun from the Defendant's residence. In fact, during a search of the Defendant's residence, Officer Lorrie Mulligan [of the] McKenzie Police Department . . . was aware of the gun and left it." (*Id.* at PageID 34.)

The probation officer responded to the objections, advising the Court that the obstruction-of-justice enhancement was proper and that "the defendant's actions during the entirety of this case do not appear to warrant" a reduction for acceptance of responsibility. (2d Addendum to PSR at 1–2.) Regarding obstruction, the officer explained that

---

[5] Section 3C1.3 provides for a three-level increase if the defendant committed an offense while out on bond. U.S.S.G. § 3C1.3.

> [t]he defendant attempted to conceal the firearm that he was illegally possessing. The firearm was a critical piece of evidence in this case and was charged in one of the counts in the indictment. The defendant knew that he could not possess firearms due to his previous felony conviction. He said as much to the ATF investigators when they interviewed him at his home. The defendant contacted the C[onfidential] I[nformant] to pick up and conceal his firearm prior to the arrival of the ATF agents. His motive is not clear, but it is apparent that he did not want the ATF to find that firearm.

(1st Addendum to PSR at 1.)

Prior to sentencing, the parties entered into a verbal agreement to recommend a sentence of 30 months' incarceration in the 2014 case and 42 months on the 2015 case, with the first 30 months to run concurrently and the remaining 12 months to run consecutively to the 30 months. (No. 1:15-cr-10098-JDB-1, D.E. 32 at PageID 120–21.) At the sentencing hearing on March 25, 2016, the prosecutor explained why the parties reached the compromise:

> There are, as the Court is aware, there are a number of objections that have been raised and alternative guidelines. One that would apply without the enhancements and a sentencing range that would apply with the enhancements regarding acceptance of responsibility. That took care of one of the objections.
>
> And the other objection was a two level enhancement in—let me be specific here— in Paragraph 27 [of the PSR], the adjustment for obstruction of justice.
>
> Mr. West and I discussed that matter. And we believe, I think fairly, that the Court could decide that either favorably to Mr. McKennie or favorably to the government. It's somewhat of a toss-up, as well as the issue regarding the acceptance of responsibility.
>
> What we have done was basically split the difference between the sentence range that would result with all enhancements in place, and the sentence, the low end of the guideline range that would apply if . . . Mr. West['s] objections were granted.

(*Id.* at PageID 118.)

Defense counsel further explained to the Court that the parties' recommended sentence of 42 months' incarceration represented a compromise between 51 months, which was the low end

5

of the PSR's advisory range, and 30 months, which would have been the low end of the range had Defendant's objections been sustained. (*Id.* at PageID 122.)

After considering the sentencing factors under 18 U.S.C. § 3553 and the parties' recommendation, the Court sentenced Defendant to an effective sentence of 42 months' incarceration and three years of supervised release. (*Id.* at PageID 125.) In compliance with the appellate waiver in the plea agreements, Defendant did not take a direct appeal.

## DISCUSSION

In his Amended Petition, McKennie asserts the following claims:

Claim 1: "[C]ounsel was ineffective for failing to adequately explain the meaning of the collateral-attack waiver in the plea agreement[s], and for failing to ensure the plea agreement[s] complied with the 2014 Department of Justice Memorandum on plea agreement waivers[.]" (D.E. 23-1 at PageID 359–60; *see also* D.E. 12 at PageID 152.)

Claim 2: "[C]ounsel was ineffective for failing to object to the omission of a reduction under U.S.S.G. § 2K2.1(b)(2)[.]" (D.E. 23-1 at PageID 360; *see also* D.E. 12 at PageID 153.)

Claim 3: "[C]ounsel was ineffective for failing to advise McKennie of an entrapment defense[.]" (D.E. 23-1 at PageID 360; *see also* D.E. 12 at PageID 155.)

Claim 4: "[C]ounsel was ineffective for failing to collaterally attack a prior state conviction." (D.E. 23-1 at PageID 360; *see also* D.E. 12 at PageID 156.)

Claim 5: "The plain terms of McKennie's plea agreements were breached by the Government's failure to recommend a sentence at the bottom of the Guideline range," and "counsel was ineffective for failing to object to this breach." (D.E. 23-1 at PageID 368.)

Respondent, the United States of America, filed a response to the Amended Petition, arguing that Claim 3 was waived by the entry of the guilty plea in the 2015 case, and that all of Petitioner's claims are without merit. (D.E. 24.) McKennie filed a reply, maintaining that he is entitled to relief. (D.E. 26.)

### I.     Legal Standard

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).  A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude.  *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Under *Strickland v. Washington*, a petitioner asserting that his counsel was ineffective must demonstrate two elements:  (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."  466 U.S. 668, 687 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689 (citation and internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options."  *Id.* at 690.  "[S]trategic

choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

## II.     Claim 1

Petitioner asserts that counsel provided ineffective assistance by failing to explain to him that the appeal waiver in each plea agreement prohibited him from raising ineffective assistance claims in a § 2255 proceeding. He further alleges that counsel "concealed" from him a United States Department of Justice policy that provides that the Government will not "seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel." (D.E. 12-1 at PageID 163.) The claim is without merit.

The waiver provision in each plea agreement provided, in relevant part:

> The defendant agrees to waive his right to challenge his sentence, and the manner in which the sentence was determined, and in any case in which the term of imprisonment and fine are within the maximums provided by statute, his attorney's alleged failure to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought pursuant to Title 28 United States Code, Section 2255.

(No. 1:14-cr-10103-JDB-1, D.E. 20 at PageID 33; No. 1:15-cr-10098-JDB-1, D.E. 17 at PageID 29.) Nothing in the language of the appeal waiver precludes McKennie from pressing the ineffective assistance claims asserted in the present matter, as none of them relate to counsel's

8

failure to file a notice of appeal. The Government concedes that the waiver provision has no preclusive effect in this § 2255 proceeding. (*See* D.E. 24 at PageID 377–78.) Therefore, counsel cannot be said to have performed deficiently regarding the waiver, and no prejudice to Petitioner resulted from counsel's conduct. Accordingly, Claim 1 is DENIED.

### III.   Claim 2

McKennie contends that counsel rendered ineffective assistance by failing to argue for a reduction in offense level under U.S.S.G. § 2K2.1(b)(2). He maintains that, had counsel pressed the argument, there is a reasonable probability that his Guidelines imprisonment range would have been lower. The Court determines that the claim is moot and without merit.

Section 2K2.1(b)(2) provides, in relevant part, that "[i]f the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level . . . to 6." The Sixth Circuit "construes the language of § 2K2.1(b)(2) literally, and allows the downward adjustment only if the defendant can show that he possessed the firearms 'solely' for lawful sporting purposes or collection. 'Solely' means 'to the exclusion of alternate or competing' uses." *United States v. Williams*, 76 F. App'x 54, 55 (6th Cir. 2003) (citing *United States v. Clingan*, 254 F.3d 624, 626 (6th Cir. 2001)). "[U]sing a gun to threaten . . . another person" is not a lawful use for purposes of § 2K2.1(b)(2). *United States v. Mendoza-Alvarez*, 79 F.3d 96, 99 (8th Cir. 1996). "[T]he defendant bears the burden of proving, by a preponderance of the evidence, that a reduction in the offense level pursuant to § 2K2.1(b)(2) is merited." *Williams*, 76 F. App'x at 55 (citing *United States v. Morrison,* 983 F.2d 730, 732 (6th Cir. 1993)).

The inmate's only assertion of prejudice in Claim 2 is that, had counsel argued for the § 2K2.1(b)(2) reduction in offense level, he would have been entitled to a lower Guidelines

9

advisory range of incarceration. (*See* D.E. 12 at PageID 153; D.E. 12-1 at PageID 168; D.E. 23-1 at PageID 365.) However, on December 21, 2018, he was released from the physical custody of the Federal Bureau of Prisons ("BOP") and is now serving his three-year term of supervised release.[6] As he is no longer in BOP custody, "the Court cannot grant him relief from incarceration." *Williams v. United States*, No. 16-cv-2757, 2019 WL 2411452, at *1 (W.D. Tenn. June 7, 2019).

Moreover, he does not argue "that his three-year term of supervised release was imposed in violation of the Constitution, that the Court was without jurisdiction to impose it, or that it was in excess of the maximum authorized by law." *Id.* (citing 28 U.S.C. 2255(a); *Lukasik v. United States*, No. CIV. 08-10960, 2011 WL 1296852, at *5 (E.D. Mich. Mar. 31, 2011) (holding that § 2255 petitioner's claims about the length of his sentence became moot when he was released from custody and he did not "appear to quarrel with the amount of restitution ordered or the term of supervised release")).[7] Therefore, Claim 2 "has been rendered moot with his release from BOP custody." *Id.* (quoting *United States v. Hinson*, No. 2:02-cr-22, 2015 WL 5712767, at *4 (E.D. Tenn. Sept. 29, 2015), and citing *Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009)) ("Mootness

---

[6] *See* Federal Inmate Locator, https://www.bop.gov/inmateloc (last accessed July 29, 2020). The Court has jurisdiction over this § 2255 proceeding because Petitioner filed his claims while he was still in custody. *See United States v. Zack*, 173 F.3d 431, 1999 WL 96996 (6th Cir. 1999) (table).

[7] As noted in the PSR, 18 U.S.C. § 3583(b)(2) provides that "the Court may impose a term of supervised release of not more than 3 years per count." (PSR at ¶ 62 (bolding omitted).) Under the Guidelines, Petitioner was subject to a supervised release range of 1 to 3 years based on the fact that "each count is a Class C Felony." (*Id.* at ¶ 63 (citing U.S.S.G. § 5D1.2(a)(2)).) Therefore, a reduction in the Guidelines' *incarceration* range would not have resulted in a reduction in the advisory supervised release range. Moreover, there exists no reasonable probability that, had the § 2K2.1(b)(2) reduction been applied, the undersigned would have imposed a term of supervised release of less than three years, let alone less than 16 months, which is the time remaining in Petitioner's 3-year term of supervised release.

10

results when events occur during the pendency of a litigation which render the court unable to grant the requested relief.")).

Even if the claim were not moot, however, Petitioner would not prevail on the merits. McKennie alleges that he possessed each of the firearms for sporting or collection purposes. He notes that nineteen of the twenty-one firearms were recovered from a storage unit, where they "were stored in a manner showing a valued collection." (D.E. 12-1 at PageID 166.) Specifically, they were "[i]nventoried and locked in a heavy safe." (*Id.*) He further argues that "[f]ive of those firearms were treasured family heirlooms," and that "numerous boxes [of ammunition were] antique in their original boxes." (*Id.*) Regarding the pistol found in his home, he insists that it was the "most recent addition to his collection, having been purchased approximately two weeks before his arrest." (*Id.* at PageID 165.) He contends that, "[a]t that time [he] was having medical problems," which "delayed taking the pistol to the safe at the storage unit to be secured with the rest of his collection." (*Id.*) The "Marlin 22 rifle" that was found under his bed "was brand new in the box" and was "purchased for plinking, target shooting with [his] 16 year old grandson." (*Id.*)

The Government maintains that counsel was not ineffective in deciding not to pursue the § 2K2.1(b)(2) reduction. In support, it submitted trial counsel's affidavit, in which he explains his decision-making process:

> I did discuss at great length the application of U.S.S.G. § 2K2.1(b)(2) with Mr. McKennie. There was an issue as to whether all guns and ammunition were for the purposes as set forth in U.S.S.G. § 2K2.1 and my discussions with Mr. McKennie established that some of these weapons and ammunition were not for collection purposes. There was also the issue of the one weapon that was involved in the Aggravated Assault in State Court (Carroll County General Sessions No. 14CR22249, 2014) where Mr. McKennie was accused of using a firearm against the twin sister of his live-in girlfriend. (Attached as Exhibit B is a copy of the Complaint).

11

> It was explained to Mr. McKennie that pursuant to U.S.S.G. § 2K2.1(b)(6)(B) if the Government proved that he had used or possessed any firearm or ammunition in connection with another felony offense that the offense level could be increased by four.[8] It was explained that at the same time . . . this four level increase was imposed that it could eliminate the possibility of any reduction pursuant to U.S.S.G. 2K2.1(b)(2). As part of plea negotiations, United States Assistant District Attorney General Powell agreed not to pursue the four level increase if Mr. McKennie did not pursue the U.S.S.G. 2K2.1(b)(2) reduction. Mr. McKennie agreed that this was a good plea negotiation and consented to same.

(D.E. 18-1 at ¶¶ 11–12.)

McKennie does not dispute counsel's recitation. He maintains, however, that counsel should not have taken into account the twin sister's statement that he pointed the .22 caliber pistol at her because even the Government conceded that the statement was uncorroborated. (D.E. 26 at PageID 395 (citing PSR at ¶ 9).) Thus, he insists that there was "no evidence to support that the .22 caliber pistol was used unlawfully." (*Id.*) The argument is unavailing.

The twin sister's account, while uncorroborated, was contained in a sworn statement to law enforcement. (*See* D.E. 18-1 at PageID 338.) Counsel reasonably viewed the sworn statement as increasing his client's risk of incurring an offense level increase for using a firearm in connection with another felony, and he also reasonably concluded that the statement would tend to undermine the viability of a § 2K2.1(b)(2) argument for a reduction in offense level. Having assessed the risks, Attorney West secured the Government's promise not to pursue the four-level increase in exchange for Defendant's promise not to pursue the reduction.

On this record, Petitioner has failed to rebut the strong presumption that his attorney's representation was "within the wide range of reasonable professional assistance; that is, [he has not] overcome the presumption that, under the circumstances, the challenged action might be

---

[8] In relevant part, § 2K2.1(b)(6)(B) provides for a four-point increase in offense level "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6)(B).

considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). Claim 2 is DISMISSED as moot and is otherwise without merit.

### IV.   Claim 3

Petitioner argues that counsel provided ineffective assistance by failing to pursue an entrapment defense in the 2015 case, and that counsel's failure to do so "render[ed] [his] guilty plea involuntary." (D.E. 12 at PageID 155.) In support, he alleges that the undercover officer who posed as a gun purchaser repeatedly contacted him to arrange for the sale, which ultimately resulted in his indictment for being a felon in possession of ammunition. He also maintains that he was vulnerable because, at the time, he was "67 years old and in bad health during the course of the sting operation." (D.E. 12-1 at PageID 170.) He insists that he "reluctantly agreed" to meet the undercover officer to broker the sale of the firearm, which he claims was owned by a friend. (*Id.* at PageID 169.) He states that he "did not profit from the sale." (*Id.* at PageID 170.) Respondent counters that Petitioner waived this claim when he entered his guilty plea in the 2015 case and that the claim is also without merit. In his reply, which was submitted by retained § 2255 counsel, Petitioner does not address the Government's arguments, but instead "rests" on the *pro se* presentation of the claim. (D.E. 26 at PageID 396.) The Court finds that Respondent's arguments are well-taken.

#### A.  Waiver

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). In other words, "[a] voluntary and unconditional guilty plea generally waives any non-jurisdictional claims that arose before the plea, including the

13

defense of entrapment." *United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267).

"A guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial . . . and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618–19 (1998)).

The record in McKennie's criminal case belies his assertion that his guilty plea was not knowing and voluntary. At the change of plea hearing in the 2015 case, the undersigned scrupulously followed the plea colloquy requirements set forth in Fed. R. Crim. P. 11. (*See* No. 1:15-cr-10098-JDB-1, D.E. 31 at PageID 89–106, 108.) Petitioner admitted under oath that he understood the terms of the plea agreement, the "many constitutional rights" he was waiving, *Taylor*, 281 F. App'x at 469, and the key elements of the offense to which he was pleading guilty, *Valdez*, 362 F.3d at 909. His "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), which he has not rebutted.

Because McKennie's guilty plea to the 2015 charge was knowing and voluntary, it served as a waiver of his claim that counsel rendered ineffective assistance by failing to raise an entrapment defense. Claim 3 is therefore subject to dismissal on this ground. *See e.g.*, *Medina v. Woods*, No. 2:11-CV-12340, 2013 WL 5423727, at *8 (E.D. Mich. Sept. 26, 2013) ("Petitioner's plea of guilty forecloses any challenges to any pre-plea claims of ineffective assistance of counsel

14

involving counsel's failure to raise an entrapment defense prior to petitioner entering his plea of guilty."); *Mitchell v. United States*, No. C-2-02-050, 2003 WL 1869156, at *3 (S.D. Ohio Apr. 2, 2003) (citing *Broce*, 488 U.S. at 566) ("Because petitioner has entered a guilty plea, he may not now raise in federal habeas corpus, a claim that his attorney was ineffective for failing . . . to proceed with the defense of entrapment.").

### *B. Merits*

Even if the claim was not waived, Petitioner could not show that counsel abandoned a valid entrapment defense. "An entrapment defense has two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Hammadi v. United States*, No. 17-5851, 2018 WL 3630003, at *2 (6th Cir. June 4, 2018) (brackets omitted) (quoting *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011)).

At McKennie's trial, the Government would have had to prove beyond a reasonable doubt that Defendant had the predisposition to commit the offense. *United States v. Hackworth*, 483 F. App'x 972, 975 (6th Cir. 2012) (citing *United States v. Pannell*, 737 F.2d 521, 534 (6th Cir. 1984)). "Predisposition is shown by '[t]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; . . . whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government.'" *Id.* (quoting *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010)).

The record belies Petitioner's allegation that he was not predisposed to commit the 2015 offense. The PSR recites that McKennie contacted the undercover officer on his own to determine if he still wanted to purchase a firearm. (PSR at ¶ 15.) At the sentencing hearing, the undersigned

15

invited Petitioner to say anything he wished to say to the Court. (No. 1:15-cr-10098-JDB-1, D.E. 32 at PageID 123.) When asked whether he had reviewed the PSR with his attorney and discussed it with him, he answered, "Yes, sir." (*Id.*) Nevertheless, he raised no concern about the PSR's reference in ¶ 15 to his having contacted the purchaser to try to close the deal.

Counsel's affidavit is consistent with the facts set forth in the PSR:

> Mr. McKennie indicated to me that at one point he called the purchaser to see if the purchaser was still interested in the purchase. After discussion with Mr. McKennie[,] it was determined [that] the facts of the [2015] offense did not warrant an entrapment defense and that was not pursued. It was decided by Mr. McKennie that the better strategy would be to pursue getting an acceptance of responsibility reduction by Mr. McKennie entering a plea to the [2015] offense.

(D.E. 18-1 at ¶ 13.)

Importantly, Petitioner does not dispute counsel's account. What is more, only five months before he committed the 2015 offense, he pleaded guilty in the 2014 case to being a felon in possession of firearms and was out on bond in that case when he sold the firearm to the undercover agent. McKennie's predisposition to commit the 2015 offense is therefore supported by the record. Counsel's decision to pursue an adjustment in offense level for acceptance of responsibility in lieu of an entrapment defense did not constitute deficient performance and there was no resulting prejudice to Petitioner.

Accordingly, Claim 3 is DISMISSED as having been waived by the guilty plea, and is otherwise without merit.

## V.     Claim 4

Petitioner asserts that counsel was ineffective by failing to challenge the validity of his state felony convictions that served as the predicates for his federal crimes of being a felon in possession of firearms and ammunition. He alleges that his state convictions "were not legal/lawful because he made them under heavy duress, and the [state] judge did not advise him

16

of his loss of firearm possession rights for pleading guilty." (D.E. 12-1 at PageID 172.) Respondent argues that the claim has been waived and is also without merit. The Court agrees.

As discussed above, McKennie's guilty plea in the 2015 case was knowing and voluntary. The same is true of his guilty plea in the 2014 case. At the change of plea hearing in that case, the undersigned engaged in the required colloquy and Defendant affirmed under oath that he understood the terms of the plea agreement, the rights he was waiving, and the elements of the crimes to which he was admitting guilt. (*See* No. 1:14-cr-10103-JDB-1, D.E. 50 at PageID 169–189.) Through his voluntary pleas, Petitioner waived his argument that counsel should have challenged the state convictions that formed the predicate felony offenses in both cases.

But even if Claim 4 were properly before the Court, it would be denied because counsel's conduct was not deficient, and McKennie suffered no prejudice. Indeed, counsel correctly advised his client, (*see* D.E. 18-1 at ¶ 9; No. 1:14-cr-10103-JDB-1, D.E. 50 at PageID 183–84), that a defendant being tried under 18 U.S.C. § 922(g)(1) may not attack the constitutional validity of the predicate felony conviction. *United States v. Steverson*, 230 F.3d 221, 224–25 (6th Cir. 2000) (citing *Lewis v. United States*, 445 U.S. 55, 56 (1980)).

For these reasons, Claim 4 is DISMISSED as having been waived by the guilty pleas, and is also devoid of merit.

## VI.    Claim 5

McKennie points out that, at sentencing, "[t]he Government failed to recommend the bottom of the Guideline range as required by the plea agreements, and this was a breach of those agreements." (D.E. 23-1 at PageID 368.) He further maintains that counsel's decision to "join[]" the sentence recommendation and his "fail[ure] to object to the Government's breach" was deficient performance resulting in prejudice. (*Id.*) Specifically, he insists that there existed a

17

reasonable probability that he would have prevailed on the objections he raised to the PSR's calculated range, resulting in an advisory incarceration range having a low end of 30 months. He therefore contends that the Government should have recommended that sentence, rather than one of 42 months. Respondent argues that counsel did not perform deficiently because there were no breaches to challenge and, further, that McKennie cannot show that he was prejudiced by counsel's conduct.

The claim is no longer properly before the Court as it is moot. Petitioner asks for specific performance of the Government's promise to recommend the low end of the Guidelines' incarceration range. However, since McKennie is no longer in BOP custody, the Court cannot not order such relief.

But even if the claim was not moot, the inmate could not demonstrate that counsel was ineffective for failing to argue at sentencing that the Government breached the agreements. As Respondent correctly points out, there were no breaches but rather a renegotiation of the recommended sentences. Therefore, counsel's failure to argue that a breach had occurred was not deficient performance.

McKennie's challenge to counsel's decision to renegotiate the recommended sentence is also without merit. As he points out, the parties renegotiated the recommended sentence because they believed "that each side ha[d] a viable argument" regarding Petitioner's objection to the U.S.S.G. § 3C1.1 obstruction enhancement. (D.E. 26 at PageID 398 (quoting No. 1:15-cr-10098-JDB-1, D.E. 32 at PageID 119).) The parties also told the Court that the "issue regarding the acceptance of responsibility" was "somewhat of a toss-up." (No. 1:15-cr-10098-JDB-1, D.E. 32 at PageID 118.) Petitioner posits that that risk required counsel to press the objections and stick with the original agreements. Such circumstance, however, supports counsel's decision to

18

renegotiate, especially since, although the Government had the burden to demonstrate obstruction, the defense had the responsibility to establish Defendant's eligibility for a reduction for acceptance of responsibility. *See United States v. Amerson*, 886 F.3d 568, 578 (6th Cir. 2018) (citing *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002)) ("The government bears the burden of proving obstruction of justice," under U.S.S.G. § 3C1.1, "by a preponderance of the evidence."); *United States v. Rodriguez*, 797 F. App'x 933, 939 (6th Cir. 2019) (citing *United States v. Donathan*, 65 F.3d 537, 541 (6th Cir. 1995)) ("The defendant has the burden to prove acceptance of responsibility at sentencing by a preponderance of the evidence."). Therefore, counsel did not perform deficiently by negotiating a recommended sentence that was nine months below the low end of the PSR's incarceration range and twelve months above the low end of the range that would have resulted had Petitioner's objections been sustained.

Claim 5 is DISMISSED as moot and as lacking merit.

For the foregoing reasons, the Amended Petition is DENIED, and the motion to expedite is DENIED as moot.

**APPEAL ISSUES**

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing is made when the petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds,

the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252–53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[9]

IT IS SO ORDERED this 7th day of August 2020.

                                          s/ J. DANIEL BREEN
                                          UNITED STATES DISTRICT JUDGE

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.